UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MASSACHUSETTS TEACHERS )<br>ASSOCIATION, )<br>)<br>    Defendant. ) | Civil Action No.: 1:22-CV-11982-GAO |

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO PROCEED PSEUDONYMOUSLY AND FOR IMPOUNDMENT OF ANY AND ALL IDENTIFYING DOCUMENTS**

NOW COMES the plaintiff and herby moves this Honorable Court to allow Plaintiff to proceed pseudonymously and for impoundment of any and all identifying documents. In support of Plaintiff's Motion, Plaintiff states the following:

## I.   INTRODUCTION

This case arises from a claim of discrimination against Plaintiff by the defendant due to Plaintiff's diagnosis of Autism.[1] Plaintiff now seeks to proceed under a pseudonym to prevent severe social stigmatization.

## II.   ALLEGED FACTS

A. Plaintiff began employment with Defendant in 2018 as a representative to local teachers' unions that are members of the MTA.

B. Plaintiff has had three performance reviews since starting in his position, all of them stellar.

C. Plaintiff has autism.

---

[1] Plaintiff also has brought a Count for FMLA Retaliation.

D. Despite his autism, Plaintiff performed his job well, and was well liked and respected by the local teachers' unions he represented.

E. In 2019, Plaintiff's son was diagnosed with Autism.

F. Plaintiff shared this information with his co-workers.

G. Co-workers began "google diagnosing" Plaintiff after they became aware of his son's diagnosis.

H. In the months that followed, many of his co-workers began to act differently toward him, making comments that suggested their view of him had been changed by his disclosure of the diagnosis.

I. Plaintiff was later officially diagnosed with Autism as well.

J. Plaintiff share this information with his coworkers.

K. After Plaintiff's diagnosis, the treatment of him became even worse.

L. For example, one co-worker said, "I know you don't understand emotions...but they're real."

M. A co-worker also referred to Plaintiff as a robot and computer.

N. Other co-workers were looking up information on the internet about autism and gossiping among themselves about the condition and how it might affect Plaintiff.

O. This was upsetting and painful to Plaintiff, and as a result he began to withdraw socially at the office and focus only on his work.

P. This seemed to provoke an angry response from his co-workers, some of whom became increasingly hostile.

Q. As a result, in January 2020, Plaintiff reported his condition to Human Resources and asked to discuss possible accommodations so that he could perform his duties without the pressure, discomfort and distraction of his co-workers' response to learning of his autism.

R. The Human Resources representative outlined specific steps that would be taken in response to his report, steps that were never taken.

S. Other than one individual from Human Resources who allowed Plaintiff to temporarily work from an empty office remote from his co-workers, Defendant did not engage in a meaningful dialogue with Plaintiff regarding accommodations.

T. Instead, Defendant took steps to hinder and/or interfere with Plaintiff's ability to do his job.

U. This included refusing to hook Plaintiff's computer up to monitors, covering his windows with opaque adhesive plastic tape (while not doing so to any other offices), pressuring him to return to the area where his co-workers were, and ultimately turning his office into a lactation room, despite the fact that there was already a lactation room more than adequate to serve the two (2) nursing mothers in the building, and the availability of several other empty offices.

V. Plaintiff was ultimately directed to move his office back to the area where his co-workers sat, shortly before the COVID-19 state of emergency sent everyone to remote work.

W. On several occasions during the shut-down, as it was clear that the targeting of Plaintiff by is co-workers was continuing.

X. Plaintiff discussed accommodations with his supervisor in April 2022.

Y. Plaintiff also communicated with Human Resources about his treatment and need for accommodations for his disability in June 2022.

Z. During the shut-down, Plaintiff requested permission to attend a negotiations training to help accommodate Plaintiff's condition by training in interpersonal dynamics and overcoming differences.

AA. As he explained to management, others in his position had been approved for this training, and the focus on the interpersonal aspect of negotiations were of particular interest to him given his autism.

BB. His request was denied.

CC. Plaintiff filed a grievance about the denial of his request, which was also denied.

DD. Two days after his grievance meeting, Plaintiff was summoned to a disciplinary investigation meeting.

EE. At that meeting, he was questioned about things like the way he stood at the office, whether he talked for too long with people when they did not want him to, and other behaviors that are common manifestations of autism.

FF. As a result of this disciplinary investigation, Plaintiff was given a five-day suspension.

GG. Due to the stress, he was experiencing as a result of all of the above conduct, Plaintiff then submitted a request for FMLA leave, which was approved.

HH. During his leave, Plaintiff was taking calls from co-workers who were looking for institutional knowledge and where to locate certain files.

II. While Plaintiff was on leave, Defendant emailed him requesting certain work be performed.

JJ. During his leave, Plaintiff activated an out-of-office reply to emails so anybody emailing him would know he was on leave.

KK. During this time, Plaintiff had access to his emails, however, he was not monitoring them as actively as he does while working.

LL. He did not see these emails from Defendant, or know they existed until receiving a notice of suspension.

MM. Plaintiff called his supervisor for an unrelated issue on September 30, 2020; October 2, 2020; and October 15, 2020.

NN. Plaintiff's supervisor did not return his calls.

OO. On October 15, 2020, Plaintiff received a letter from the Executive Director notifying him that he was suspended for an additional 30 days for failure to complete the requested tasks.

PP. Many of the tasks could not have been completed as Plaintiff was under instructions at the time not to communicate with his local unions, which would have been necessary to provide the requested information.

QQ.   Defendant also requested one task to be performed in twenty-four hours.

RR.   This particular task would have required more than twenty-four hours to perform.

SS. At this point, Plaintiff retained an attorney to communicate with Defendant's counsel about the suspension and the underlying reasons therefore.

TT. Through Counsel, Plaintiff attempted to reach an accommodation on a means to complete the requested work.

UU.   Rather than engage in a discussion of accommodations, Defendant terminated Plaintiff.

VV.   Defendant stated in a letter on or about October 20, 2020, that Plaintiff's "…employment with the MTA is terminated effective immediately for gross insubordination. Despite four requests, over the course of nearly three weeks, that you provide information needed to serve and protect your locals, you have failed to respond to or even acknowledge any of these requests."

WW.   Plaintiff was on FMLA leave at the time of defendant's demands.

### III.   LEGAL STANDARD

"Pursuant to rule 10(a), "the title of the action shall include the names of all the parties." This is a requirement in every civil action, regardless whether it is commenced in a department of the trial court or in the county court." *Singer v. Rosenkranz*, 453 Mass. 1012, 1013, 903 N.E.2d 191, 193 (2009).

"The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.' It is the exceptional case in which a plaintiff may proceed under a fictitious name." *Doe v. Bell Atl. Bus. Sys. Servs., Inc.,* 162 F.R.D. 418, 420 (D. Mass. 1995), *quoting Doe v. University of Rhode Island,* 1993 WL 667341

(D.R.I.), *citing Doe v. Frank,* 951 F.2d 320 (11th Cir.1992), *Doe v. Stegall,* 653 F.2d 180, 186 (5th Cir.1981).

"It is within the Court's discretion to allow a plaintiff to proceed pseudonymously. *Doe v. University of Rhode Island; Doe v. Hallock; Doe v. Blue Cross and Blue Shield of Rhode Island,* 794 F.Supp. 72, 73 (D.R.I.1992) (where the district court allowed the plaintiff to proceed under a pseudonym because his suit related to his status as a transsexual, noting that "I will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure."). The analysis is as follows:

> 1) there is a presumption in favor of disclosure;
> 2) a party may rebut the presumption by showing that a need for confidentiality exists;
> 3) the court must balance the need for confidentiality against the public interest in disclosure.

*Doe v. Prudential Ins. Co. of America,* 744 F.Supp. 40, 41 (D.R.I.1990)." *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995).

"Courts have allowed plaintiffs to proceed anonymously in cases involving social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of plaintiff's identity. Economic harm or mere embarrassment are not sufficient to override the strong public interest in disclosure. Cases in which parties are allowed to proceed anonymously because of privacy interests often involve "abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases." *Doe v. Blue Cross and Blue Shield of Rhode Island,* 794 F.Supp. 72, 74 (D.R.I.1992), *citing Doe v. Rostker,* 89 F.R.D. 158, 161 (N.D.Col.1981)." *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995).

Recently, The United States Court of Appeals for the First Circuit addressed this issue and provided the following framework.

"Taking our cue from this model, we think it useful to sketch four general categories of exceptional cases in which party anonymity ordinarily will be warranted.

• The first paradigm involves a would-be Doe who reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological). See, e.g., Doe v. Ayers, 789 F.3d 944, 945 (9th Cir. 2015) (allowing use of pseudonym premised upon evidence that disclosure of plaintiff-inmate's history of being sexually abused "would create a significant risk of severe harm at the hands of other inmates"); Advanced Textile, 214 F.3d at 1071 (allowing use of pseudonym for plaintiffs who "fear[ed] extraordinary retaliation, such as deportation, arrest, and imprisonment"); Lauren B. v. Baxter Int'l Inc. & Subsidiaries Welfare Benefit Plan for Active Emps., 298 F.R.D. 571, 573 (N.D. Ill. 2014) (allowing anonymity when public disclosure would threaten plaintiff's recovery from longstanding eating disorder); see generally Sealed Plaintiff, 537 F.3d at 190 (listing, as factor favoring anonymity, "whether identification poses a risk of retaliatory physical or mental harm" (quoting James, 6 F.3d at 238)).

• The second paradigm involves cases in which identifying the would-be Doe would harm "innocent non-parties." Id. (quoting James, 6 F.3d at 238); see Doe v. Trs. of Dartmouth Coll., No. 18-040, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018) (explaining that nonparty "has a stronger case for anonymity" than party); see also Doe v. Eason, No. 98-2454, 1999 WL 33942103, at *3 (N.D. Tex. Aug. 4, 1999) (granting pseudonym status to parents in litigation involving their minor child).

• The third paradigm involves cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated. See Megless, 654 F.3d at 410 (emphasizing need to ascertain whether "other similarly situated litigants [will] be deterred from litigating claims that the public would like to have litigated"). Because "courts provide the mechanism for the peaceful resolution of disputes that might otherwise give rise to attempts at self-help," they must be wary of "deter[ring] the legitimate exercise of the right to seek a peaceful redress of grievances through judicial means." Talamini v. Allstate Ins. Co., 470 U.S. 1067, 1070-71, 105 S.Ct. 1824, 85 L.Ed.2d 125 (1985) (Stevens, J., concurring); see BE & K Constr. Co. v. NLRB, 536 U.S. 516, 532, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002). A deterrence concern typically arises in cases involving "intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors." In re Sealed Case, 971 F.3d at 327. Also typical are cases in which a potential party may be implicated in "illegal conduct, thereby risking criminal prosecution," Stegall, 653 F.2d at 185, and those in which "the injury litigated against would be incurred as a result of the disclosure of the [party's] identity," Frank, 951 F.2d at 324.

• The fourth paradigm involves suits that are bound up with a prior proceeding made confidential by law. This concern manifests itself when denying anonymity

> in the new suit would significantly undermine the interests served by that confidentiality. *72 See, e.g., R.F.M. v. Nielsen, 365 F. Supp. 3d 350, 371 (S.D.N.Y. 2019) (granting pseudonymity to non-minor plaintiffs challenging immigration authorities' denial of "special immigrant juvenile" status due to family court adjudications, in part because "related records from the New York Family Courts are protected by law"); Doe v. Bates, 18-1250, 2018 WL 4539034, at *1 (S.D. Ill. Sept. 21, 2018) (granting pseudonym status to plaintiff bringing excessive force claim arising from juvenile detention because "revealing his identity would, in effect, unravel the protections afforded to his juvenile record")."

Doe v. Massachusetts Inst. of Tech., 46 F.4th 61, 71–72 (1st Cir. 2022)

## IV.     ANALAGOUS CASE LAW

The United States District Court for the District of Columbia was presented with a strikingly similar case. In *Doe v. Sessions*, the plaintiff had been diagnosed with Asperger's Syndrome, Acute Stress Disorder, Panic Disorder, post-traumatic stress disorder, and anxiety. At the time, Asperger's Syndrome was classified as it's own diagnosis, whereas now, Asperger's Syndrome is diagnosed as Autism.

The Plaintiff in *Doe v. Sessions*, alleged the FBI had engaged in a series of harassing treatment during Plaintiff's employment such as participating "in meetings and department exercises in which he was at various points ridiculed, threatened, and falsely accused of violating FBI procedures. This alleged harassment caused Plaintiff to experience panic attacks and other conditions which required him to take multiple sick leaves…. When Plaintiff returned from his leaves, he alleges that his supervisors "singled him out," constructively demoted him, withheld access to necessary training, and continued to harass and publicly humiliate him, causing additional mental trauma. Finally, Plaintiff alleges that when he sought reasonable accommodations for his mental conditions, the FBI's Reasonable Accommodation Program Coordinator unnecessarily disclosed Plaintiff's confidential medical documentation—including his Asperger's diagnosis—to his supervisors. According to Plaintiff, the FBI failed to provide

him with reasonable accommodations and ultimately terminated him because of his disabilities." *Doe v. Sessions*, No. CV 18-0004 (RC), 2018 WL 4637014, at *1 (D.D.C. Sept. 27, 2018) (Citations omitted).

The Court reasoned, "[t]his case involves both a sensitive, highly personal matter and the risk of mental harm should Plaintiff's identity be disclosed. Plaintiff alleges that Defendants humiliated him, harassed him, and ultimately discriminated against him because of his Asperger's Syndrome and other sensitive mental conditions. *See generally* Compl. His claims rely, in part, on his contention that an FBI employee improperly disclosed his Asperger's diagnosis to his supervisors, causing "severe emotional trauma," including depression and panic attacks. *Id.* ¶ 115; Pls. Mot. at 1. Plaintiff contends that public identification here will cause him to "once again be traumatized by the knowledge that his information will remain forever public. *Id.* at 2. "Out of grave concern that the Court could exacerbate any psychological issues the plaintiff is currently experiencing, the Court finds that this factor weighs in favor of anonymity."[1] *Cabrera*, 307 F.R.D. at 7 (granting the plaintiff rape victim's motion for pseudonymous filing because public disclosure could subject the plaintiff to "psychological trauma"); *see also J.W.*, 318 F.R.D. at 202 (granting minor plaintiff's motion to proceed anonymously to "protect[ ] [the plaintiff's] identity and avoid[ ] unnecessary publicity concerning his [autism diagnosis]")."*Doe v. Sessions*, No. CV 18-0004 (RC), 2018 WL 4637014, at *4 (D.D.C. Sept. 27, 2018).

"Moreover, courts in other jurisdictions have found a "substantial public interest" in "preventing the stigmatization of litigants with mental illnesses" weighing in favor of pseudonymous filing in actions involving such illnesses. *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997). These courts reason that public disclosure would deter

civil litigants with mental conditions from "ever reaching the courthouse steps [to vindicate their rights] for fear of repercussions that would ensue if their condition was made public," *Doe v. Hartford Life & Accident Ins. Co.,* 237 F.R.D. 545, 550 (D.N.J. 2006) (granting the plaintiff's motion to file pseudonymously in an action related to the plaintiff's severe bipolar disorder), particularly where the litigants have sought to keep the mental conditions at issue confidential. *Provident Life & Acc. Ins.*, 176 F.R.D. at 468. These considerations lend additional weight in favor of pseudonymous filing here, where Plaintiff alleges that he kept his Asperger's Syndrome diagnosis confidential from everyone except his wife for twenty-five years before that diagnosis was allegedly disclosed by an FBI employee to Plaintiff's supervisors. Compl. ¶ 111. *Doe v. Sessions*, No. CV 18-0004 (RC), 2018 WL 4637014, at *4 (D.D.C. Sept. 27, 2018).

The Court ultimately held, "[f]or the foregoing reasons, it is hereby **ORDERED** that because Plaintiff's privacy interest in proceeding pseudonymously outweighs Defendants' interest in transparency and "the customary and constitutionally-embedded presumption of openness in judicial proceedings," *Microsoft Corp.*, 56 F.3d at 1464 (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) ), Plaintiff's Motion to File Under a Pseudonym (ECF No. 2) is **GRANTED**." *Doe v. Sessions*, No. CV 18-0004 (RC), 2018 WL 4637014, at *5 (D.D.C. Sept. 27, 2018).

V.   **ARGUMENT**

Plaintiff's case involves both a sensitive, highly personal matter and the risk of mental harm should Plaintiff's identity be disclosed. Similar to *Doe v. Sessions, supra*, Plaintiff alleges that Defendant humiliated him, harassed him, and ultimately discriminated against him because of his Autism. Plaintiff's claims rely, in part, on contention that employees of the Defendant improperly disclosed his Autism diagnosis to his coworkers, causing severe emotional trauma.

Public identification here will cause Plaintiff to once again be traumatized by the knowledge that his information will remain forever public. This fear satisfies the requirements of the first paradigm.

Plaintiff also has a minor son who's diagnosis plays a critical role in plaintiff's case. Disclosure of Plaintiff would also identify the minor child. This concern satisfies the requirements of the second paradigm.

Moreover, there is a substantial public interest in preventing Plaintiff's stigmatization and allowing him to proceed with his pseudonymous filing. To deny Plaintiff's motion would have a chilling effect on similar litigants and their fear of stigmatization through litigation. This satisfies the requirements of the third paradigm.

Under the circumstances, Plaintiff's need for confidentiality exists and far outweighs the public interest in disclosure.

Defendant will not be prejudiced by the allowance of this motion.

### VI.　**CONCLUSION**

WHEREFORE, Plaintiff herby moves this Honorable Court to allow Plaintiff to proceed pseudonymously and for impoundment of any and all identifying documents.

                                              Respectfully submitted,
                                              JOHN DOE,
                                              By counsel:

                                              /s/ Andrew T. Silvia
                                              _____
                                              Andrew T. Silvia, Esquire
                                              (BBO# 670555)
                                              aslivia@slnlaw.com
                                              Emily E. Smith-Lee
                                              (BBO# 634223)
                                              esmithlee@slnlaw.com
                                              SLN Law, LLC
                                              46 South Main Street
                                              Sharon, MA  02067
                                              781-784-2322

Dated: 12/7/22

**CERTIFICATE OF SERVICE**

      I, Andrew T. Silvia, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF) on December 20, 2022.

                                                Andrew T. Silvia, Esq.